**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JEREMY JOHN RUSSELL**
                             **Plaintiff,**

    **v.**                                                          **5:13-CV-1398**

**COMMISSIONER OF SOCIAL SECURITY,**

                             **Defendant.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


# DECISION & ORDER

## I. INTRODUCTION

Jeremy John Russell ("Plaintiff") brought this action under the Social Security Act, 42 U.S.C. § 405(g), to review a final determination by the Commissioner of Social Security ("Commissioner") denying his application for benefits. Plaintiff contends, *inter alia*, that Administrative Law Judge Scott M. Staller ("ALJ") erred by failing to properly follow the treating physician rule, giving improper weight to the opinion of a non-treating physician, and making improper credibility determinations. See Plaintiff's Brief, dkt. # 10, at 13-24. The Commissioner argues that the ALJ's decision is supported by substantial evidence and made in accordance with the correct legal standards. Pursuant to Northern District of New York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs with a motion for judgment on the pleadings. For the reasons that follow, Plaintiff's motion is granted and the matter is remanded to the Commissioner.

1

## II. BACKGROUND

The Court assumes familiarity with the facts and procedural history of the case, as well as the undisputed medical record.

## III. DISCUSSION

### a. The ALJ's Opinion Improperly Applied the Treating Physician Rule

Plaintiff contends, *inter alia*, that the ALJ failed to follow the treating physician rule in affording little weight to the opinion of Dr. Anil Verma, who concluded that Plaintiff suffered severe limitations. The Court agrees.

"'[W]hile a treating physician's retrospective diagnosis is not conclusive, it is entitled to controlling weight unless it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence.'" Woodmancy v. Colvin, 577 F. App'x 72, 74 (2d Cir. 2014)(Summary Order)(quoting Byam v. Barnhart, 336 F.3d 172, 183 (2d Cir. 2003) and citing Perez v. Chater, 77 F.3d 41, 48 (2d Cir. 1996)). "If the ALJ chooses not to afford such an opinion controlling weight, then the ALJ must consider the following factors in deciding what weight to assign the opinion: (1) examining relationship; (2) treatment relationship, including its length, nature and extent; (3) supportability with medical evidence; (4) consistency with the record as a whole; (5) specialization of the examiner; and (6) any other relevant factors." *Id.* (citing 20 C.F.R. § 404.1527(c)(1)-(6)).

"In addition to considering the required factors, an ALJ must ultimately 'give good reasons in [the] notice of determination or decision for the weight [the ALJ] give[s] [a claimant's] treating source's opinion.'" Rolon v. Comm'r of Soc. Sec., 994 F. Supp.2d 496, 508 (S.D.N.Y. 2014)(quoting 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)); see e.g. Snell v.

Apfel, 177 F.3d 128, 134 (2d Cir. 1999)(Even though the final question of disability is reserved to the Commission, "this does not exempt administrative decision makers from their obligation . . . to explain why a treating physician's opinions are not being credited."). This requirement allows courts to properly review ALJs' decisions and provides information to claimants regarding the disposition of their cases, especially when the dispositions are unfavorable. Snell, 177 F.3d at 134.

While claimants are not entitled to have their treating physician's opinion be automatically controlling, "[they are] entitled to be told why the Commissioner has decided . . . to disagree with [the claimant's treating physician]." Id.; see Rolon, 994 F. Supp.2d at 509 ( When an ALJ determines that a treating physician's opinion is to be given less than controlling weight, the ALJ must provide "good reason.").

> Treating sources are owed deference because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) (2013). The treating physician rule imposes upon the ALJ, at a minimum, a higher duty of explanation when determining the weight that must be given to a treating source's opinion.

Rolon, 994 F. Supp.2d at 506.

"The ALJ must fulfill the 'heightened duty of explanation [that exists] when a treating physician's medical opinion is discredited.'" Id., at 508 (quoting Gunter v.Comm'r of Soc. Sec., 361 Fed. App'x 197, 199 (2d Cir. 2010). Failure to do so warrants remand. Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013) (citing Snell, 177 F.3d at 133)).

With regard to Dr. Verma's opinion, the ALJ wrote:

> Little weight has been accorded to the opinion of Dr. Anil Verma in Exhibit 16F. Dr. Verma reported in October 2011 that the claim had a GAF score of

3

> 55, indicating only moderate difficulty in functioning (Exhibit 16F/2). Yet, his opinion later reports that the claimant has marked to extreme functional limitations in all areas of functioning (Exhibit 16F/6). Furthermore, Dr. Verma stated that the claimant had experienced three or more episodes of decompensation in the past twelve months, and he would be unable to make decisions (Exhibit 16F/5-6). The internal contradictions of having both moderate and severe limitations in the same functional domain renders this opinion less persuasive. Furthermore, such extreme limitations are inconsistent with the medical record and objective findings, including those of Dr. Verma himself. (*see* Exhibit 11F and 12F).

Social Security Administrative Record ("R."), dkt. # 9, at 31.

The ALJ failed to discuss explicitly the six factors set forth by 20 C.F.R. § 404.1527(c)(1)-(6). Further, the ALJ failed to provide good reasons for his decision discrediting Dr. Verma's opinion, and concluding that the treating records did not support Dr. Verma's conclusion. The ALJ bases his conclusion that the opinion is contradictory on a supposed discrepancy between the listed GAF score and the extreme limitations Dr. Verma finds in Plaintiff's ability to function. Unstated in the ALJ's opinion, however, are the numerous "signs and symptoms" that Dr. Verma reports Plaintiff exhibited. (See R. at 412). Included in those "signs and symptoms" are "[a]nhedonia or pervasive loss of interest in almost all activities"; "[a]ppetite disturbance with weight change"; "[d]ecreased energy"; "[g]eneralized persistent anxiety"; "[m]ood disturbance"; "[d]ifficulty thinking or concentrating"; [p]sychomotor agitation or retardation"; "[p]ersistent disturbances of mood or affect"; "[r]ecurrent obesessions or compulsions which are a source of marked distress"; "[e]motional withdrawal or isolation"; "[p]ersistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity or situation;" "[f]light of ideas"; "[m]emory impairment–short, intermediate or long term;" "[s]leep disturbance"; and "[r]ecurrent severe panic attacks manifested by a sudden

4

unpredictable onset of intense apprehension, fear, terror and sense of impending doom occurring on the average of at least once a week[.]" Id. at 412. Having examined the medical record, the Court finds these limitations are supported by the record. Moreover, a finding that Plaintiff suffered from this large number of difficult conditions surely explains why Dr. Verma could conclude that Plaintiff was severely limited in his ability to function. The conclusions are reasonable based on the record, and cannot be contradicted simply because of one GAF score.

The ALJ may have disagreed with Dr. Verma's conclusions about the severity of Plaintiff's condition, but mere disagreement is an insufficient basis for failure to follow the treating physician rule. See Woodmancy, 577 F. App'x at 75 (The rule requires an ALJ to give controlling weight to a treating physician's opinion unless "'it is contradicted by other medical evidence or overwhelmingly compelling non-medical evidence.'") (quoting Byam, 336 F.3d at 183 (citations and internal quotation marks omitted)).

Further, the ALJ's single, short statement that the "extreme limitations" are inconsistent with the medical record and objective findings, including those of Dr. Verma himself, contains no explanation of what these contradictions were or why they were so severe that Dr. Verma's opinion could be ignored. As Plaintiff's brief points out, Dr. Verma's opinion did not contradict the medical record describing his treatment of the Plaintiff, which consistently reported persistent anxiety and inability to concentrate, and that medication had not sufficiently rectified his condition. Such conclusory statements about the treatment records by the ALJ fail to fulfill the heightened duty of explanation. See *Rolon*, 994 F. Supp.2d at 509 ("However, since the ALJ did not cite any medical opinion to dispute the treating physician['s] conclusions regarding the nature and severity

5

of Rolon's impairments, the ALJ did not provide good reasons as required by the treating physician rule.")(quotation marks and citations omitted). Failing to properly apply the rule, "or consider the required factors constitutes legal error and is a sufficient basis for remand." Rolon, 994 F. Supp.2d at 506; see also Chase v. Astrue, 2012 WL 2501028, at *12 (E.D.N.Y. June 28, 2012).

The Court will therefore remand the matter to the ALJ and direct him to give proper consideration to Dr. Verma's opinion.

### b. Opinion of State Agency Reviewer, Dr. Hochberg

Plaintiff contends that the ALJ's decision to afford "significant weight" to the opinion of a state agency psychologist, Dr. Allan Hochberg was also error. Plaintiff contends that Dr. Hochberg's opinion was not based on the entire medical record. Dr. Hochberg rendered his opinion on November 5, 2010. See R. at 353-70. Plaintiff continued to treat with Dr. Verma at least until October 2011. Dr. Verma also produced a medical source statement after Dr. Hochberg rendered his opinion. Those facts mean that Hochberg did not have the complete medical record when he rendered his opinion. Likewise, Hochberg did not have all of the available earlier medical records when he made his findings. Such records were not submitted until after Hochberg provided his assessment. Dr. Hochberg's opinion was thus not informed by all of the relevant medical evidence, and Plaintiff contends the ALJ erred in affording that opinion significant weight.

Plaintiff's position is that substantial evidence does not support the weight the ALJ afforded Dr. Hochberg's opinion. Part of the Court's task in this case is to determine whether the ALJ's findings are supported by substantial evidence in the administrative

6

record. See Tejada v. Apfel, 167 F.3d 770, 773 (2d Cir. 1999); Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998); Cruz v. Sullivan, 912 F.2d 8, 11 (2d Cir. 1990); Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982). An ALJ's finding will be deemed conclusive if supported by substantial evidence. See 42 U.S.C. § 405(g); see also Perez v. Chater, 77 F.3d 41, (2d Cir. 1996) 46; Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)("It is not the function of a reviewing court to determine *de novo* whether a Plaintiff is disabled. The [Commissioner's] findings of fact, if supported by substantial evidence, are binding.")(citations omitted).

In the context of Social Security cases, substantial evidence consists of "more than a mere scintilla" and is measured by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 842 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L. Ed. 126 (1938)). Where the record supports disparate findings and provides adequate support for both the Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual determinations. See Quinones v. Chater, 117 F.3d 29, 36 (2d Cir. 1997)(citing Schauer v. Schweiker, 675 F.2d 55, 57 (2d Cir. 1982)); Alston v. Sullivan, 904 F.2d 122, 126 (2d Cir. 1990). Although the reviewing court must give deference to the Commissioner's decision, a reviewing court must also bear in mind that the Act is ultimately "'a remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'" Vargas v. Sullivan, 898 F.2d 293, 296 (2d Cir. 1990)(quoting Rivera v. Schweiker, 717 F.2d 719, 723 (2d Cir. 1983)).

With reference to Dr. Hochberg, the ALJ stated:

7

> The opinion of state agency psychologist Dr. Allan Hochberg, Ph.D., has . . . been accorded significant weight (*see* Exhibits 7F, 8F, and 9F). Based on his review of the medical record, Dr. Hochberg found the claimant to have mild to moderate functional impairments (Exhibits 9F/1 and 7F/11). He noted that the claimant had received only outpatient care and had no history of psychiatric hospitalizations. Dr. Hochberg cited the treating physician's notes finding the claimant's mental status to be essentially unremarkable aside from a sarcastic attitude towards the examiner (see Exhibit 4F/4-5). The undersigned notes that state agency medical consultants are specifically empowered to make findings of fact on the medical issues, including, but not limited to, the existence and severity of an individual's impairments, the existence and severity of an individual's symptoms, whether the individual's impairments meet or is [sic] equivalent in severity to the requirements for any impairment listed in 20 CFR part 404, subpart P, apppendix 1 (the Listing of Impairments), and the individual's residual functional capacity. In this instance the record supports the findings of Dr. Hochberg that no listing has been met and no area of functioning has more than a mild to moderate restriction. (*see* Exhibit 7F). The undersigned finds the claimant to have moderate functional limitations with respect [to] the "paragraph B" criteria in order to afford him the benefit of the doubt.

R. at 30.

The Court agrees with the Plaintiff that affording Dr. Hochberg's opinion significant weight (and greater weight than Dr. Verma's opinion) was not supported by substantial evidence. Dr. Hochberg did not have the benefit of a large portion of the medical record, and a portion which appeared to show that Plaintiff's mental condition had deteriorated. While the ALJ might have accorded weight to Dr. Hochberg's opinion while still recognizing the limitations inherent in a document prepared before all of the medical evidence, a reasonable mind could not consider the limitations inherent in that document and find the Dr. Hochberg's opinion as evidence adequate to support the conclusion that Dr. Verma's opinion should be discounted and Dr. Hochberg's opinion adopted. On remand, the ALJ should afford Dr. Hochberg's opinion its proper weight.

### c. Credility Determination

While the Court has already determined that this case requires remand, another

issue must be addressed. Plaintiff contends the ALJ erred by concluding that "the statements made by the claimant and witness concerning the intensity, persistence and limiting effects of [Plaintiff's] symptoms are not credible to the extent they are inconsistent with the above residual functional capacity statement." R. at 28. Plaintiff contends that the ALJ's credibility determinations are flawed because the ALJ interpreted the record incorrectly in three areas.

> In assessing the Plaintiff's credibility, the ALJ found that:
>
> Despite obvious limiting effects caused by his mental impairments, the record indicates that the claimant's alleged symptoms and limitations may have been overstated. The evidence notes that the claimant has gone out of town on occasion for the weekend since his alleged onset date (Exhibit 3F/8). Although a vacation and a disability are not necessarily mutually exclusive, the claimant's decision to go out of town for a weekend appears to contradict such extreme symptoms of crippling anxiety and extreme lethargy. The claimant has also reported that he is sexually active, which underscores his reported diminished social functioning. As previously noted, the claimant has also shown noncompliance at times by discontinuing his prescribed medication despite the fact that his medications provided improvement in his functioning in the past.

R. at 29.

"It is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." Cichocki v. Astrue, 534 Fed. Appx. 71, 75 (2d Cir 2013) (quoting Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)). The Social Security regulations charge the ALJ with determining whether a claimant's symptoms are the result of "a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms." Id. If so, the ALJ must then examine the evidence to determine "how the symptoms affect the claimant." Id. (citing 20 C.F.R. § 416.929(c)(1)). In assessing the credibility of a claimant's subjective complaints "about

9

the intensity and persistence of pain and other symptoms," the ALJ may not reject those claims simply "'because the available medical evidence does not substantiate" them. Id. at 76 (quoting 20 C.F.R. § 416.929(c)(2). Instead, the ALJ is to make a credibility determination based on several factors. Id. (See 20 C.F.R. § 416.929(c)(3)). "The ALJ's decision 'must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the [ALJ] gave to the individual's statements and the reasons for that weight.'" Id. (qutoing SSR 96-7p, 1996 SSR LEXIS 4, 1996 WL 374186, at *2).

The problem with the ALJ's credibility determination is that it is not supported by the record. The ALJ pointed to three areas that demonstrate how Plaintiff "overstated" the limits his condition imposed on his activities. First, the ALJ contends that Plaintiff traveled out of town "on occasion," which the ALJ contends "contradicts" his claims of extreme anxiety and lethargy. Beyond the fact that the medical record–including reports that Plaintiff slept as many as 14 hours a day--supports Plaintiff's claims of lethargy and anxiety, the ALJ's finding completely mischaracterizes Plaintiff's alleged "trips" out of town. The record contains only one mention of a trip out of town, and no record of why Plaintiff took that trip. R. at 329. While Plaintiff was away on that trip, his mother made a call to the physician's assistant who was treating him to report that he was suffering from anxiety and expressed fear about taking newly prescribed medication while away. Id.. In other words, the one piece of evidence indicating that Plaintiff had traveled out of town indicates that he suffered a panic attack while doing so. Likewise, the ALJ's finding that Plaintiff had overstated the effects of his condition because he reported that he was sexually

10

active misreads the record. Indeed, there are several instances in the record where the Plaintiff reports he was *not* sexually active. See R. at 345, 333, 324. Similarly, the record does not support the ALJ's conclusion that Plaintiff was not compliant with his medication. Instead, like many prescribed various medications for chronic conditions, Plaintiff at times found that particular medications did not reduce his symptoms or had side-effects that caused him to stop taking a particular medication and seek new treatment. See R. at 382-3. Nothing in the record indicates that Plaintiff persistently refused to take *any* medication. Instead, the record demonstrates that he actively took medication and sought out the proper dosages and combinations from his doctor.

For these reasons, the Court must therefore find that the ALJ's credibility determination is not supported by the evidence in the record. On remand, the ALJ should properly apply the facts in the record in making the credibility determination.[1]

## III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is GRANTED, and the Commissioner's motion for judgment on the pleadings is DENIED. The decision of the Commissioner is REVERSED and this case is REMANDED, pursuant to sentence four of 42 U.S.C. § 405(g), for a determination consistent with this Decision

---

[1] The Plaintiff also contends that the ALJ erred in failing to consider fully the testimony of Plaintiff's father about the assistance that he provided to the Plaintiff in completing his daily tasks. Plaintiff contends that this testimony supports his claims about the extent of those limitations. The Court notes that the ALJ considered Plaintiff's father's testimony. On remand, the ALJ should of course consider Plaintiff's father's testimony in light of a proper assessment of Plaintiff's testimony. Similarly, after properly determining the extent of Plaintiff's limitations as explained above, the ALJ should reassess the ability of the Plaintiff to perform any jobs available in the national economy as required by the Social Secuirty regulations.

11

and Order.

**IT IS SO ORDERED.**

Dated:September 22, 2015

_Thomas J. McAvoy_
Thomas J. McAvoy
Senior, U.S. District Judge